**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
EUGENIO SEVILLA and STEPHANIE GARRIDO,
*individually and on behalf of others similarly situated*,

                              Plaintiffs,                             **1:20-cv-06072-PKC-CLP**

-against-

HOUSE OF SALADS ONE LLC. (D/B/A
HOUSE OF SALADS) and ASHER BEN TOV,

                              Defendants.

-------------------------------------------------------------X

**DECLARATION OF MICHAEL FAILLACE, ESQ.**
**IN SUPPORT OF ORDER FOR JUDGMENT BY DEFAULT**

MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
(212) 317-1200
*Attorneys for Plaintiffs*

MICHAEL FAILLACE, an attorney duly admitted to practice in New York and in this Court, affirms under penalty of perjury pursuant to 28 U.S.C. Section 1746 as follows:

## PRELIMINARY STATEMENT

1.      I am the managing partner of Michael Faillace & Associates, PC., which represents Plaintiffs EUGENIO SEVILLA and STEPHANIE GARRIDO ("Plaintiffs"), in this lawsuit for violation of minimum and overtime wage laws, spread of hours, wage notice and statement violations, liquidated damages, prejudgment interest, and attorneys' fees and costs under the federal Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") and implementing regulations.

2.      I submit this declaration in support of Plaintiffs' application for a default judgment pursuant to Fed. R. Civ. P. 55(b)(2) and Local Rule 55.2(b).

3.      Plaintiffs properly served Defendants with the Complaint and Defendants have failed to appear, plead, file an answer, or otherwise defend this action. Accordingly, Plaintiffs are entitled to default judgment.

## RELEVANT PROCEDURAL HISTORY

4.      Plaintiffs commenced his action on December 14, 2020 by filing the Complaint.  Dkt. No. 1. **Exhibit A** (Complaint).

5.      Copies of the Summons and Complaint were served on House of Salads One LLC on December 16, 2020 pursuant to Fed. R. Civ. P. 4(h) (1)(B), N.Y. C.P.L.R § 311-a(a), and Section 303 of the New York Limited Liability Company Law, by personally serving Nancy Dougherty, an authorized agent in the Office of the Secretary of State of New York. Copies of the Summons and Complaint were served on Asher Ben Tov on December 21, 2020 pursuant to Fed. R. Civ. P.  4(e) (1) and New York C.P.L.R. § 308(2), by delivering the Summons and Complaint to "John Doe," a person of suitable age and discretion at  Defendant's principal place of business and mailing copies

of each to Defendant Asher Ben Tov in accordance with the requirements of New York CPLR §
308(2.) True and correct copies of the affidavits of service of the Complaint are attached hereto as
**Exhibit B** (all affidavits of service).

6.      The Defendants failed to answer the Complaint or otherwise appear.  On February
22, 2021 the Clerk of the Court issued certificates of default as to House of Salads One LLC and
Asher Ben Tov.  Dkt. No. 15. **Exhibit C** (certificates of default).

7.      Plaintiff Eugenio Sevilla's and Plaintiff Stephanie Garrido's declarations are annexed
hereto as **Exhibits D and G**, respectively.

<u>**STATEMENT OF RELEVANT FACTS**</u>

8.      Plaintiffs are former employees of Defendants. Exhibit A ¶¶ 1, 16, 18. Defendants
own(ed), operate(d), and control(led) a wholesale retail seller of gourmet salads, located at 6167
Stickland Ave, Brooklyn, New York, 11234, under the name "House of Salads." Ex. A ¶¶ 19.
Defendant Asher Ben Tov had the power to hire and fire Plaintiffs, control Plaintiffs' terms and
conditions of employment, and determine the rate and method of Plaintiffs' compensation.  Exhibit
A ¶ 21, 29.

9.      At all times relevant to this action, Defendants were engaged in interstate commerce
or in an industry or activities that affect interstate commerce. Exhibit A ¶ 31.

10.     The gross annual volume of sales made by Defendants, in each year from 2015 to
2020, was not less than $500,000.  Exhibit A ¶ 30.

**A.**     <u>**Plaintiff Eugenio Sevilla**</u>

11.     Plaintiff Eugenio was employed by Defendants as a kitchen manager from
approximately November 20, 20215 until on or about August 7, 2020.  Exhibit A ¶¶ 34,35; Exhibit
D ¶¶ 8,9.

12.     Plaintiff Sevilla's work did not require discretion or independent judgment.  Exhibit A ¶ 37; Exhibit D ¶ 11.

13.     From approximately November 2015 until on or about March 15, 2020, Plaintiff Sevilla worked from approximately 8:00 a.m. until on or about 6:00 p.m., Mondays through Thursdays and from approximately 8:00 a.m. until on or about 11:00 p.m., on Fridays (typically 55 hours per week). Exhibit A ¶ 38; Exhibit D ¶ 13.

14.     From approximately March 16, 2020 until on or about July 31, 2020, Plaintiff Sevilla worked from approximately 5:00 a.m. until on or about 10:00 p.m., Sundays through Fridays (typically 102 hours per week). Exhibit A ¶ 39; Exhibit D ¶ 14.

15.     From approximately August 1, 2020 until on or about August 6, 2020, Plaintiff Sevilla worked from approximately 8:00 a.m. until on or about 6:00 p.m., 6 days a week (typically 40 hours per week). Exhibit A ¶ 40; Exhibit D ¶ 15.

16.     Throughout his employment, Plaintiff Sevilla was paid his wages in cash. Exhibit A ¶ 41; Exhibit D ¶ 16.

17.     From approximately November 2015 until on or about August 2020, Defendants paid Plaintiff Sevilla $12.00 per hour for all hours worked. Exhibit A ¶ 42; Exhibit D ¶ 17.

18.     Plaintiff Sevilla's pay did not vary even when he was required to stay later or work a longer day than his usual schedule. For instance, two to three days a week, he started working 30 minutes prior to his scheduled start time and continued working 30 minutes past his scheduled departure time. Exhibit A ¶ 43; Exhibit D ¶ 18.

19.     Plaintiff Sevilla was not required to keep track of his time nor, to his knowledge, did Defendants use any time tracking devices or punch cards to accurately reflect his hours worked. Exhibit A ¶ 45; Exhibit D ¶ 19.

20.     Plaintiff Escobar did not receive overtime pay (at time and a half) for hours worked in excess of forty (40) hours per week. Exhibit D ¶¶ 10.

21.     Plaintiff Sevilla did not receive spread of hours pay, despite working in excess of ten (10) hours per day from approximately November 2015 until on or about August 2020. Exhibit A ¶¶ 7, 69.

22.     Defendants did not provide Plaintiff Sevilla with an accurate statement of wages, as required by NYLL 195(3). Exhibit A ¶ 48; Exhibit D ¶ 20.

23.     Defendants did not provide Plaintiff Sevilla with a written notice, in English or in Spanish (his primary language), of his rate of pay, employer's regular pay day, or any such other information relating to his compensation.  Exhibit A ¶ 49; Exhibit D ¶ 21.

24.     Throughout his employment, Defendants required Plaintiff Sevilla to purchase "tools of the trade" with his own funds—including annual kitchen supplies. Exhibit A ¶ 50.

**B.     Plaintiff Stephanie Garrido**

25.     Plaintiff Garrido was employed by Defendants as a salad preparer from approximately July 15, 2017 until on or about August 7, 2020.  Exhibit A ¶¶ 51, 52; Exhibit E ¶¶ 8,9.

26.     Plaintiff Garrido's work did not require discretion or independent judgment.  Exhibit A ¶ 54; Exhibit E ¶ 11.

27.     From approximately July 15, 2017 until on or about March 15, 2020, Plaintiff Garrido worked from approximately 8:00 a.m. until on or about 6:00 p.m., Mondays through Thursdays and from approximately 8:00 a.m. until on or about 11:00 p.m., on Fridays (typically 55 hours per week). Exhibit A ¶ 56; Exhibit E ¶ 13.

28.     From approximately March 16, 2020 until on or about July 31, 2020, Plaintiff Garrido worked from approximately 5:00 a.m. until on or about 10:00 p.m., Sundays through Fridays (typically 102 hours per week). Exhibit A ¶ 57; Exhibit E ¶ 14.

4

29.     From approximately August 1, 2020 until on or about August 6, 2020, Plaintiff Garrido worked from approximately 8:00 a.m. until on or about 6:00 p.m., 6 days a week (typically 40 hours per week). Exhibit A ¶ 58; Exhibit E ¶ 15.

30.     Throughout her employment, Plaintiff Garrido was paid her wages in cash. Exhibit A ¶ 59; Exhibit E ¶ 16.

31.     From approximately July 2017 until on or about August 2020, Defendants paid Plaintiff Sevilla $12.00 per hour for all hours worked. Exhibit A ¶ 60; Exhibit E ¶ 17.

32.     Plaintiff Garrido did not receive overtime pay (at time and a half) for hours worked in excess of forty (40) hours per week. Exhibit E ¶¶ 12.

33.     Plaintiff Garrido's pay did not vary even when she was required to stay later or work a longer day than her usual schedule. Once every two weeks, Defendants required her to start working 1 to 2 hours prior to her scheduled departure time and continue working 1 to 2 hours past her scheduled departure, and was not compensated for the additional time she worked. Exhibit A ¶ 61-62; Exhibit E ¶ 18.

34.     Plaintiff Garrido was not required to keep track of her time, nor to her knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected her hours worked. Exhibit A ¶ 64; Exhibit E ¶ 20

35.     Plaintiff Garrido did not receive spread of hours pay, despite working in excess of ten (10) hours per day from approximately July 2015 until on or about August 2020. Exhibit A ¶¶ 7, 69.

36.     Defendants did not provide Plaintiff Garrido with an accurate statement of wages, as required by NYLL 195(3). Exhibit A ¶ 66; Exhibit E ¶ 21.

37.     Defendants did not provide Plaintiff Sevilla with a written notice, in English or in Spanish (his primary language), of his rate of pay, employer's regular pay day, or any such other information relating to his compensation.  Exhibit A ¶ 67; Exhibit E ¶ 21.

38.     Throughout her employment, Defendants required Plaintiff Garrido to purchase "tools of the trade" with her own funds—including kitchen supplies. Exhibit A ¶ 68.

**ARGUMENT**

**A.     Plaintiffs are Entitled to Judgment by Default**

39.     It is well settled that defendants who fail to file an answer or otherwise move in respect to a complaint filed, are deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability.  D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 107 (2d Cir. 2006) ("Rule 55 tracks the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party") (internal citation omitted).  In this case, Defendants have failed to file an answer or otherwise respond to the Complaint and the time to do so has expired.  Thus, Plaintiffs' allegations are unchallenged, and consequently they are entitled to default judgment.

40.     Upon entry of a default, the court may award damages based upon evidence submitted through affidavits and exhibits, or by an evidentiary hearing.  Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012).  "While Rule 55(b)(2) permits the district court to conduct a hearing to determine damages, such a hearing is not mandatory."  Id.  "Together, 'Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is "necessary and proper" to hold an inquest on damages.'"  Id. (quoting Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993)).

41.     Plaintiffs maintain that the proof submitted herewith is sufficient on its own to obviate the need for a hearing on damages. Based on the evidence Plaintiffs have put forward, damages, including back pay, liquidated damages, prejudgment interest, should be awarded in the amount of $240,260.50, plus prejudgment interest and attorneys' fees and costs.  See e.g. Herrara v 12 Water St. Gourmet Café, 2016 US Dist LEXIS 25565, at *12 [SDNY Feb. 29, 2016, No. 13-CV-4370 (JMF)(RLE)] ("While a court usually conducts an inquest hearing to determine damages, a hearing is not necessary where extensive documentary evidence is available").

**B.     Unpaid Minimum and Overtime Wages**

42.     When an employee is subject to both the federal and state wage laws, the employee is entitled to the provisions of each law which provide the greater benefits.  See e.g. Davis v 2192 Niagara St., LLC, 2016 US Dist LEXIS 98351, at *31, n 10 [WDNY July 26, 2016, No. 15-CV-00429A[F]]; see also e.g. Copantitla v Fiskardo Estiatorio, Inc., 788 F Supp 2d 253, 290 [SDNY 2011].

43.     Under the New York Hospitality Wage Order, all restaurant employees are entitled to a spread of hours pay. 12 NYCRR 146-1.6 (d). The spread of hours is the "length of the interval between the beginning and end of an employee's workday. The spread of hours for any day includes working time plus time off for meals plus intervals off duty." 12 NYCRR 146-1.6.

44.     House of Salads One LLC falls within the ambit of the New York Hospitality Industry Wage Order. 12 NYCRR 146 et seq. A "restaurant" is defined as "any eating or drinking place that prepares and offers food or beverage for human consumption either on any of its premises or by such service as (…) counter service to the public, to employees, or to members or guests of members, and services in connection therewith or incidental thereto." 12 NYCRR 146-3.1. Throughout Plaintiffs' employment, House of Salads One LLC prepared and offered food such as

7

salads, dips, and dressings \ to clients via counter service, for immediate human consumption. Accordingly, for the purposes of the wage law, the Defendant's business was a "restaurant."

45.     Under the New York Hospitality Industry Wage Order and the federal Fair Labor Standards Act, "an employer shall pay an employee for overtime at a wage rate of 1 1/2 times the employee's regular rate for hours worked in excess of 40 hours in one workweek."  12 NYCRR § 146-1.4; see also 29 U.S.C. § 207[a] [1].

46.      In addition, under the New York Hospitality Industry Wage Order, "on each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate." 12 NYCRR 146-1.6 (a). This additional hour shall not be considered payment for time or work performed and "need not be included in the regular rate for the purpose of calculating overtime pay." 12 NYCRR 146-1.6 (c).

47.     Here, Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours, in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

48.     In addition, Plaintiffs were not paid overtime at the rate of one-and-a-half times their regular rate.  Rather, they were paid a fixed hourly rate that did not take their hours worked over 40 into account.

49.     To determine the Plaintiffs' unpaid overtime, Plaintiffs multiplied the "regular rate" by 1.5 to determine the overtime rates the Plaintiff should have received.  See 12 NYCRR § 146-1.4 ("An employer shall pay an employee for overtime at a wage rate of 1 1/2 times the employee's regular rate for hours worked in excess of 40 hours in one workweek").

50.     The onus is on an employer to maintain records of employees' hours worked and wages paid.  29 U.S.C. §211(c).  "In a FLSA case, in the absence of rebuttal by [D]efendants,

[P]laintiffs' recollection and estimates of hours worked are presumed to be correct." <u>Zeng Liu v. Jen</u> <u>Chu Fashion Corp</u>, 2004 U.S. Dist. LEXIS 35, *8 [S.D.N.Y. 2004].

51.     At all times relevant to the FLSA claims in this action, the minimum wage rate under the FLSA was $7.25 per hour. Employees must be paid one-and-one half times their regular rate for each hour worked over forty (40) hours worked in a week. 29 U.S.C. § 207(a)(1).  From 2011 until 2013, the New York minimum wage rate was the same as the federal rate.  As of December 31, 2014, the New York Minimum wage rate was $8.75 per hour; it further increased to $9.00 per hour as of December 31, 2015; it further increased to $11.00 per hour as of December 31, 2016; it further increased to $13.00 per hour as of December 31, 2017; it further increased to $15.00 per hour as od December 31, 2018. 12 N.Y.C.R.R. 146-1.2. New York's rules on overtime explicitly incorporate those of the FLSA, and thus require pay at one-and-one-half times the regular normal rate for each hour over forty hours worked in a week.  12 N.Y.C.R.R. 146-1.4. The regular rate is the rate an employee is regularly paid for each work hour. 12 N.Y.C.R.R. § 146-3.5.

52.     Plaintiffs Eugenio Sevilla and Stephanie Garrido are owed $243,410.28in unpaid minimum, overtime wages, and spread of hours, as set forth in the damages calculation annexed hereto as **Exhibit F** (damages chart).

### C.     <u>Violations of Wage Notice and Statement Requirements</u>

53.     Defendants did not provide Plaintiffs with wage notices at the start of their employment or annually, or an accurate and lawful wage statement with each payment of wages as required by NYLL §§ 195(1) and 195(3).

54.     Plaintiffs are therefore entitled to statutory damages in the maximum amount of $5,000 under each section, for a total of $20,000.  NYLL §§ 195 and 198.

**D.**   **Liquidated Damages**

55.    The FLSA and NYLL provides for a liquidated damages award "'unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law.'" McLean v. Garage Management Corp., 2012 U.S. Dist. LEXIS 55425 at *21 (S.D.N.Y. April 19, 2012) (quoting NYLL §198(1-a)); See 29 U.S.C. § 216[b] ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages"); Jiaren Wei v Lingtou Zhengs Corp., 2014 US Dist LEXIS 182325, at *1 [EDNY Dec. 3, 2014, No. 13 CV 5164 [FB]]] (quoting N.Y. Lab. Law § 663[1]).[1]

56.    Given the uncontroverted evidence, Defendants cannot meet their burden to establish good faith.  Accordingly, Plaintiffs are entitled to liquidated damages, computed at 100% of the unpaid minimum, overtime wages, and spread of hours as set forth in the damages calculation annexed hereto as Exhibit F.

**E.**   **Statute of Limitations**

57.    Plaintiffs are entitled to a three-year limitations period under the FLSA and a six-year limitations period under the NYLL. A willful violation triggers a three-year statute of limitations for FLSA claims and a six-year statute of limitations for Plaintiff' NYLL claims. 29 U.S.C. § 255(a); N.Y. Lab. Law §§ 198(3), 663(3).  A violation is "willful" if the employer either knew or showed "reckless disregard as to whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 286 U.S. 128, 133 (1988). Willfulness is also established when an employer fails to investigate whether its compensation policy was legal. See Hardrick v. Airway Freights Systems, Inc., 63 F.

---

1 The employer can make this award discretionary by a showing of good faith. 29 U.S.C. § 260.  Since Defendants are in default, they cannot meet this burden.

Supp. 2d 898, 904 [N.D.Ill. 1999]; <u>Alvarez v. IBP, Inc.</u>, 339 F.3d 894, 909 [9th Cir. 2003], <u>aff'd</u>, 126 S.Ct. 514 [2005] (upholding the three-year statute of limitations because employer was on notice of FLSA requirements but "took no affirmative action to assure compliance" with them).

58.     In the present matter, irrespective of a finding of willfulness, Plaintiffs claims are covered from at least December 2014 to the end of their employment with the Defendants (August 2020).[2]

**F.     <u>Prejudgment Interest</u>**

59.     Under N.Y. C.P.L.R. § 5004, prejudgment interest runs at the rate of nine percent [9%] per annum simple interest. <u>See</u> <u>Perero v. Food Jungle, Inc.</u>, No. 05 Civ 4347, 2006 WL 2708055, at *8 [E.D.N.Y. Aug. 7, 2006].  As to the date from which interest is to be calculated, the statute states that "[w]here . . . damages were incurred at various times, interest [may] be computed . . . upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001[b]. When claims that are reduced to judgment have arisen on different dates, the Court may compute prejudgment interest from an appropriate single median date. <u>See</u> <u>Perero</u>, 2006 WL 2708055, at *8; <u>Koylum, Inc. v. Peksen Realty Corp.</u>, 357 F. Supp. 2d 593, 597 [E.D.N.Y.], <u>aff'd in pertinent part and vacated in part</u>, 160 Fed.Appx. 91 [2d Cir. 2005].

60.     Accordingly, prejudgment interest for Plaintiff Eugenio Sevilla is calculated from March 30, 2018; prejudgment interest for Plaintiff Stephanie Garrido is calculated from January 25, 2019.

---

[2] For the sake of completeness, it may be noted that the Defendants are in default and therefore cannot oppose the finding of willfulness. Defendants should have been aware of the existence of the FLSA and its overtime requirements. Furthermore, even if the Defendants did not know of the FLSA, the Defendants' actions are still willful because there is no evidence that Defendants investigated whether their compensation policy was legal. <u>See</u> <u>Hardrick</u>, 63 F. Supp. 2d at 904; <u>Decraene v. Neuhaus (U.S.A.), Inc.</u>, 2005 U.S. Dist. LEXIS 10836 at *23-*24 [S.D.N.Y. 2005]; Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 340 [S.D.N.Y. 2005] ("A failure to pay is 'willful' when the employer knowingly, deliberately, or voluntarily disregards its obligation to pay wages") (internal quotations omitted).

G.    **Attorneys' Fees and Costs**

61.    The FLSA and NYLL both contain fee-shifting provisions for actions to recover

unpaid wages. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment

awarded to the Plaintiff or Plaintiffs, allow a reasonable attorney's fee to be paid by the defendant,

and costs of the action"); N.Y. Labor Law § 663(1) ("[An employee] may recover . . . costs and such

reasonable attorney's fees as may be allowed by the court"); see, e.g., Guardado v. Precision Fin.,

Inc., No. 04 Civ. 3309, 2008 U.S. Dist. LEXIS 47881, at *2 [E.D.N.Y. Mar. 25, 2008].

62.    Plaintiffs incurred costs and attorneys' fees in pursuing this action and seeks an

award of reasonable attorneys' fees and costs. The attorneys' fees total $4,805.00 and the costs total

$540.00, including a filing fee of $400.00 and other costs associated with serving the Defendants

with the Summons and Complaints.

63.    "The most useful starting point for determining the amount of a reasonable fee is the

number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This

calculation provides an objective basis on which to make an initial estimate." Arbor Hill Concerned

Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 186 [2d Cir. 2008]. Prior to Arbor

Hill, this amount was known as the "lodestar" amount, which the Second Circuit has suggested be

known going forward as the "presumptively reasonable fee." Id. at 183. It is "well established that

'any attorney ... who applied for court-ordered compensation in this Circuit ... must document the

application with contemporaneous time records ... specifying, for each attorney, the date, the hours

expended, and the nature of the work done.'" Cesario v BNI Constr., Inc., 2008 US Dist LEXIS

103155, at *19 [SDNY Dec. 15, 2008] (quoting N.Y. State Ass'n for Retarded Children, Inc. v.

Carey, 711 F.2d 1136, 1148 [2d Cir. 1983]). While reviewing the records, the Court should make "a

conscientious and detailed inquiry into the validity of the representations that a certain number of

hours were usefully and reasonably expended." Lunday v. City of Albany, 42 F.3d 131, 134 [2d

Cir.1994].   The inquiry should be focused on "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 [2d Cir. 1992] (citation omitted). However, in considering the records, the Court should not "engage in 'an ex post facto determination of whether attorney hours were necessary to the relief obtained.'" Cesario, 2008 U.S. Dist. LEXIS 103155, at *20 (quoting Grant, 973 F.2d at 99]). While the Court may exclude hours from the calculation that are "excessive, redundant, or otherwise unnecessary," Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 [1983], "[t]here is no precise rule or formula for making these determinations," Id. at 436.  Plaintiffs' attorney has submitted a compilation of contemporaneous time records for the Court's consideration on this motion. **Exhibit G** (Plaintiffs' counsel's contemporaneous time and cost records).

64.     The Court should find that all attorney hours spent on this case were reasonable under the circumstances and include every hour expended in its calculation of the presumptively reasonable fee. With respect to figuring a reasonable hourly rate, the Second Circuit has held that the term means "what a reasonable, paying client would be willing to pay." Arbor Hill, 522 F.3dat 184. The rate should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Reiter v. MTA N.Y. City Transit Auth., 457 F.3d 224, 232 [2d Cir. 2006] [citation omitted]. In considering the appropriate rate, the Court may also use its own knowledge of the relevant market. See McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96-97 [2d Cir. 2006].

65.     A breakdown of attorneys' fees and costs incurred in filing the Complaint and seeking default, in the form of this firm's standard billing sheet is attached hereto as **Exhibit G**.

66.     The attorneys who worked on the case are as follows:

I, Michael. Faillace, am the Managing Member of Michael Faillace & Associates, P.C, and have been in practice since 1983.  My work is billed at $450 per hour.  From 1983

13

to 2000, I was in-house Employment Counsel with International Business Machines Corporation (IBM). I taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and I am a nationally-renowned speaker and writer on employment law. I am also the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations. See, e.g., Manley v. Midan Rest. Inc., No. 1:14-cv-1369 (S.D.N.Y. March 27, 2017), Doc. No. 42 at *32, 35-37 (fees of $500 per hour for FLSA litigator with 34 years of experience).

Catalina Sojo ("CS"), graduated with a J.D. equivalent degree from Pontificia Universidad Javeriana in Bogota, Colombia, in 2017. She received a Master of Laws degree (LL.M.) from Cornell University School of Law in 2019. Prior to joining Michael Faillace & Associates in June 2020, she focused her practice in intellectual property litigation and enforcement, having worked as an associate at Baker McKenzie and as in-house counsel at ViacomCBS. Her work is billed at a rate of $350 per hour.

Paralegals at Michael Faillace & Associates, P.C. are billed at a rate of $125 per hour, well within a range of rates for paralegal work that courts have routinely approved. See, e.g., Cortes v. New Creators, Inc., 2016 U.S. Dist. LEXIS 79757, *19-20 (S.D.N.Y. June 20, 2016); see also Guallpa v. NY Pro Signs Inc., 2014 U.S. Dist. LEXIS 77033, *29 (S.D.N.Y. May 27, 2014).

**H.  Additional Damages**

67.     Plaintiffs also request that the judgment provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4).

**CONCLUSION**

68.     Based on the above information and exhibits, Plaintiffs assert the record supports a judgment against the Defendants in favor of Plaintiffs in the total amount of $243,410.28, not including prejudgment interest.

69.     Prejudgment interest continues to run and should ultimately be computed through the date judgment is entered.

14

70.     Additionally, Plaintiff is entitled to $4,805.00 in attorneys' fees and costs in the amount of $540.00.

71.     As shown herein, no inquest is necessary when, as in the present case, the Court has before it the proper measure of damages and evidence submitted by Plaintiffs that allow damages to be calculated with reasonable certainty. The calculations made in arriving at the proposed judgment amount are set forth in both the explanation above, and in the damages chart itself. Sufficient definitive information and documentation is provided such that the amount provided for in the proposed judgment can be calculated, based upon allegations contained in the Complaint, and supplemented by Plaintiff's declaration accompanying these motion papers.

72.     No part of the judgment sought has been paid.

73.     Plaintiffs also request that the judgment provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198[4].

74.     For the reasons stated above and in the accompanying declarations and exhibits Plaintiffs' motion for a default judgment should be granted.

**WHEREFORE**, Plaintiffs request the entry of Default and the entry of Judgment against Defendants.

Dated:  New York, New York
        April 23, 2021

                                    MICHAEL FAILLACE & ASSOCIATES, P.C.

                                    /s/ Michael Faillace
                                    Michael Faillace, Esq.
                                    MICHAEL FAILLACE & ASSOCIATES, P.C.
                                    One Grand Central Place
                                    60 East 42nd Street, Suite 4510
                                    New York, New York 10165
                                    Tel: (212) 317-1200
                                    Fax: (212) 317-1620

Email: michael@faillacelaw.com
*Attorneys for Plaintiffs*

16