UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
EUGENIO SEVILLA and STEPHANIE
GARRIDO, individually and on behalf of
others similarly situated,

                Plaintiffs,

      - against -

HOUSE OF SALADS ONE LLC (D/B/A
HOUSE OF SALADS) and ASHER BEN
TOV,

                Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**

20-CV-6072 (PKC) (CLP)

PAMELA K. CHEN, United States District Judge:

On December 14, 2020, Plaintiffs Eugenio Sevilla and Stephanie Garrido (collectively, "Plaintiffs") commenced this action against House of Salads One LLC ("House of Salads") and Asher Ben Tov ("Ben Tov") (collectively, "Defendants") for violations of the Fair Labor Standards Act ("FLSA"), the New York Minimum Wage Act, the New York Labor Law ("NYLL"), and "spread of hours" and overtime wage orders of the New York Commissioner of Labor, codified at N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6 (the "Spread of Hours Wage Order"). Defendants failed to appear or otherwise defend. After the Clerk of Court entered a default order against Defendants (Dkt. 15), Plaintiffs moved for default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure (Dkt. 16). For the reasons stated herein, the Court grants Plaintiffs' motion in part and denies it in part.

# BACKGROUND

## I.   Factual Background[1]

Defendants own, operate, and control "a wholesale and retail seller of gourmet salads," House of Salads, located at 6167 Strickland Avenue, Brooklyn, New York, 11234.  (Complaint ("Compl."), Dkt. 1, ¶¶ 2, 19.)  Defendants employed Plaintiffs Sevilla and Garrido as a "kitchen manager and a salad preparer," respectively.  (*Id.* ¶ 4.)  Plaintiff Sevilla was "employed by Defendants from approximately November 20, 2015 until on or about August 7, 2020."  (*Id.* ¶ 34.)  Plaintiff Garrido was "employed by Defendants from approximately July 15, 2017 until on or about August 7, 2020."  (*Id.* ¶ 51.)  Defendant Ben Tov "had the power to hire and fire [Plaintiffs], control[led] the terms and conditions of [their] employment, and determine[d] the rate and method of [their] compensation."  (Declaration of Plaintiff Sevilla ("Sevilla Decl."), Dkt. 16-5 ¶ 6; Declaration of Plaintiff Garrido ("Garrido Decl."), Dkt. 16-6 ¶ 6.)

Plaintiffs were paid in cash (Compl., Dkt. 1, ¶¶ 41, 59) and "regularly handled goods in interstate commerce" (*id.* ¶¶ 36, 53).  While Plaintiffs' schedules varied over the course of their employment, they regularly worked more than 40 hours a week and earned $12.00 per hour for the duration of their employment.  (Sevilla Decl., Dkt. 16-5 ¶¶ 12–15, 17; Garrido Decl., Dkt. 16-6 ¶¶ 12–15, 17.)  Plaintiffs did not receive overtime or spread-of-hours pay for hours worked in excess of 40 hours a week or 10 hours per day (Compl., Dkt. 1, ¶ 69) and were required to purchase "tools of the trade" with their own money (*id.* ¶¶ 50, 68).

---

[1] The Court accepts Plaintiffs' alleged facts as true.  *See Santillan v. Henao,* 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011) (taking plaintiff's fact submissions as true in default judgment action) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1996)).

Plaintiffs were neither "required to keep track of [their] time," nor, to Plaintiffs' knowledge, "did Defendants utilize any time tracking device . . . that accurately reflected [Plaintiffs'] actual hours worked."  (*Id.* ¶¶ 45, 64; *see also* Sevilla Decl., Dkt. 16-5 ¶ 19; Garrido Decl., Dkt. 16-6 ¶ 20.)  Defendants did not provide Plaintiffs with (1) "accurate wage statements" (Comp., Dkt. 1, ¶ 79), (2) notice "regarding the applicable wage and hour requirements of the FLSA and NYLL" (*id.* ¶ 75), or (3) notice of their regular hourly and overtime rates of pay (*id.* ¶ 79).  (*See also* Sevilla Decl., Dkt. 16-5 ¶¶ 20–21; Garrido Decl., Dkt 16-6 ¶¶ 21–22.)

## II.    Procedural History

Plaintiffs filed the Complaint on December 14, 2020 as a putative collective action under 29 U.S.C. § 216.[2]  (Compl., Dkt. 1, ¶ 33.)  Plaintiffs served Defendant House of Salads on December 16, 2020 (Dkt. 8) and Defendant Ben Tov on December 21, 2020 (Dkt. 10).  Plaintiffs filed their Motion for Default Judgment on April 23, 2021, seeking default judgment on their (1) unpaid minimum wage claims under the FLSA and NYLL (Dkt. 16-1 ¶¶ 42–52); (2) unpaid overtime wage claims under the FLSA and NYLL (*id.*); (3) unpaid spread-of-hours pay claims under the Spread of Hours Wage Order (*id.* ¶¶ 46–47); and (4) violations of wage notice and statement requirements claims under the NYLL (*id.* ¶¶ 53–54).  Plaintiffs seek liquidated damages under the FLSA and NYLL (*id.* ¶¶ 55–56), prejudgment interest (*id.* ¶¶ 59–60), attorneys' fees and costs (*id.* ¶¶ 61–66), and an order that the "judgment shall automatically increase by fifteen

---

[2] Although Plaintiffs brought this action on behalf of themselves and "others similarly situated" as a collective action under the FLSA, they are currently the only plaintiffs in this action. "Collective actions under the FLSA require putative class members to 'opt in' to the case." *Romero v. Floris Constr., Inc.*, No. 16-CV-4282 (PKC) (RLM), 2017 WL 5592681, at *2 n.2 (E.D.N.Y. Nov. 20, 2017).  Since no other parties have consented to the litigation as required by 29 U.S.C. § 216(b), the Court treats this case as one brought only by Sevilla and Garrido and all other collective action claims are dismissed.  *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

percent," "if any amounts [of the judgment] remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending" (*id.* ¶ 67).

## DISCUSSION

## I.     Legal Standard for Default Judgment

"A default judgment is ordinarily justified where a defendant fails to respond to the complaint." *S.E.C. v. Anticevic*, No. 05-CV-6991, 2009 WL 4250508, at *2 (S.D.N.Y. Nov. 30, 2009) (citing *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984)).  Once the Clerk of Court enters a party's default when a defendant "has failed to plead or otherwise defend," the plaintiff may file a motion for default judgment.  Fed. R. Civ. P. 55(a), (b)(1), (b)(2).  "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability," *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), and the Court draws all reasonable inferences in favor of the plaintiff, *see Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

Nevertheless, a default is "not considered an admission of damages."  *Greyhound Exhibitgroup*, 973 F.2d at 158.  The plaintiff bears the burden of presenting proof of damages, in the form of documentary evidence and/or detailed affidavits.  *See Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991).  The amount of damages awarded, if any, must be ascertained "with reasonable certainty."  *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).  The Court "possesses significant discretion and may consider a number of factors in deciding whether to grant a default judgment, including whether the grounds for default are clearly established and the amount of money potentially involved."  *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW) (CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *report and recommendation adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## II.     Defendants Were Properly Served and Failed to Appear or Otherwise Defend

Plaintiffs have satisfied the procedural requirements for default judgment.  To establish entitlement to default judgment, a plaintiff must demonstrate proper service of the summons and complaint.  *See Advanced Cap. Com. Grp., Inc. v. Suarez*, No. 09-CV-5558 (DRH) (GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013).[3]  Plaintiffs served House of Salads by delivering and leaving a copy of the Summons and Complaint with the Secretary of State for New York. (Dkt. 16-1 ¶ 5; *see also* Dkt. 16-3, at ECF[4] 1.)  This constitutes proper service on a domestic corporation in New York.  N.Y. Bus. Corp. L. § 306(b)(1); Fed. R. Civ. P. 4(h)(1)(B) (allowing service on "any other agent authorized by appointment or by law to receive service of process").  Plaintiffs served Ben Tov by delivering a copy of the Summons and Complaint to a person of suitable age at Ben Tov's principal place of business—House of Salads' Strickland Avenue location—and by mailing a copy of the Summons and Complaint to Ben Tov at the same address. (Dkt. 16-1 ¶ 5; *see also* Dkt. 16-3, at ECF 2.)  This constitutes proper service of a natural person in New York.  N.Y.C.P.L.R. § 308(2) (authorizing proper service where (1) a person of suitable age is personally served at the actual place of business of the person to be served, and (2) a copy of the summons is mailed to the person to be served at their actual place of business).  Thus, Plaintiffs properly served Defendants, and they failed to appear or otherwise defend.[5]

---

[3] An individual may be served according to the law of the state where service is made.  Fed. R. Civ. P. 4(e)(1).  A corporation may be served in the same manner as an individual as prescribed by Rule 4(e)(1) or by delivering a copy of the summons and complaint to an officer appointed by law to receive such service.  Fed. R. Civ. P. 4(h)(1).

[4] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[5] Plaintiffs also satisfied the local rule requirements.  As part of their Motion for Default Judgment, Plaintiffs provided notice of the motion (Dkt. 16, Local Civ. R. § 7.1(a)(1)), a memorandum of law (Dkt. 16-1, Local Civ. R. 7.1(a)(2)), copies of the Clerk's certificate of default for each of the Defendants (Dkt. 16-4, Local Civ. R. 55.2(b)(1)), a copy of the claim (Dkt. 16-2,

### III.   Plaintiffs' FLSA and NYLL Claims are Timely

Plaintiffs' FLSA claims are timely.  "The statute of limitations for an FLSA claim is two years, unless the violation is 'willful,' in which case it is three years."  *Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 366 (2d Cir. 2011) (citing 29 U.S.C. § 255(a)).[6]  On a motion for default judgment, allegations of willful FLSA violations are sufficient to establish willfulness.  *See Coley v. Vannguard Urban Improvement Ass'n*, No. 12-CV-5565 (PKC) (RER), 2016 WL 4179942, at *6 (E.D.N.Y. Aug. 5, 2016); *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR) (MDG), 2015 WL 1529653, at *6 (E.D.N.Y. Mar. 31, 2015) (adopting report and recommendation) ("Generally, courts have found that a defendant's default establishes willfulness.").

The Court finds that Plaintiffs' FLSA claims are timely as of December 2017.  Plaintiffs allege violations that were ongoing between November 2015 and August 2020.  This case was filed in December 2020.  Plaintiffs' claims beginning in December 2018 fall within the FLSA's two-year statute of limitations.  Plaintiffs further allege that Defendants' violations were willful.  Plaintiff Sevilla alleges that he regularly disputed his pay and hours worked with Defendant Ben Tov (Compl., Dkt. 1, ¶ 46), and that Defendants' unlawful practices were a willful attempt to "disguise the actual number of hours Plaintiffs . . . worked, and to avoid paying Plaintiffs properly

---

Local Civ. R. 552(b)(2)), proof of service of the claim (Dkt. 16-3, Local Civ. R. 55.1(b)(3)), and a proposed judgment (Dkt. 17, Local Civ. Rule 55.2(b)(3)).  Plaintiffs attest to the fact that Ben Tov is not on active military duty.  (Dkt. 16-5 ¶ 7, Local Civ. R. 55.1(b)(1).)  Plaintiffs also provided proof of mailing of the default judgment motion to Defendants.  (Dkt. 19, Local Civ. R. 55.2(c).)

[6] An FLSA violation is willful if the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by" the FLSA.  *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009).  A violation is not willful if the employer "acts reasonably" or "acts unreasonably, but not recklessly" "in determining its legal obligation."  *Porter v. N.Y. Univ. Sch. of Law*, 392 F.3d 530, 531–32 (2d Cir. 2004).

for their full hours worked" (*id.* ¶ 76).  As previously stated, Defendants, though properly served, did not plead or otherwise defend in this action.  The Court thus finds that Defendants' conduct was willful and that Plaintiffs' claims beginning in December 2017 are timely under the FLSA.

All of Plaintiffs' NYLL claims are timely.  The statute of limitations under the NYLL is six years.  *Wicaksono v. XYZ 48 Corp.*, No. 10-CV-3635 (LAK) (JCF), 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011) (citing NYLL § 663(3)), *report and recommendation adopted*, 2011 WL 2038973 (S.D.N.Y. May 24, 2011).  Because the alleged NYLL violations began in November 2015 and this case was filed in December 2020, the Court finds that all of Plaintiffs' NYLL claims are timely.

## IV.    The FLSA and NYLL's Applicability to Plaintiffs and Defendants

### A.    Defendants Are Employers Under the FLSA and NYLL and Are Jointly Liable to Plaintiffs

Defendants are employers under both the FLSA and NYLL.   The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."[7]  *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 35 (E.D.N.Y. 2015) (quoting 29 U.S.C. § 203(d)).   The inquiry into the employer-employee relationship under the FLSA is "grounded in 'economic reality'" *id.* at 35 (citing *Carter v. Dutchess Comty. Coll.*, 735 F.2d 8, 12 (2d Cir.1984)), and considers whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment

---

[7] The NYLL's definition of "employer" is identical to the definition under the FLSA. *Fermin*, 93 F. Supp. 3d at 37 ("Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA." (citations omitted).)

records." *Id.* Courts consider the "totality of the circumstances" and no single factor is dispositive. *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d. Cir. 1999).

Defendants are employers under both the FLSA and NYLL because, as discussed above, they exercised control over the terms of Plaintiffs' employment. Defendant Ben Tov had hiring and firing power over Plaintiffs, set their work schedules, and determined the rate and method of their compensation. (Sevilla Decl., Dkt. 16-5, ¶ 6; Garrido Decl., Dkt. 16-6, ¶ 6.) Defendant House of Salads similarly had the power to hire and fire employees, control terms of employment, and determine the rate and method of employee compensation. (Compl., Dkt. 1, ¶ 29.)

Defendant House of Salads is additionally subject to enterprise liability under the FLSA.

Enterprise liability under FLSA extends to entities that: (1) perform related activities "for a common business purpose"; (2) have "employees engaged in commerce[8] or in the production of goods for commerce, or . . . employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person"; and (3) have an "annual gross volume of sales made or business done [] not less than $500,000."

*Coley*, 2016 WL 4179942, at *3 (alterations and omission in original) (quoting 29 U.S.C. § 203(r)–(s)). Courts employ a four-factor test to find enterprise liability, "analyzing the extent of: (1) the interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Id.* at *5. Defendant House of Salads is subject to enterprise liability because it (1) had a "common business purpose" of selling salads, (2) used materials produced outside of New York (Compl., Dkt. 1, ¶ 31), and (3) had an "annual volume of sales of not less than $500,000" (*id.* ¶ 30).

---

[8] Under the FLSA, "commerce" is defined as "commerce, transportation, transmission or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

"[A] worker may be employed by more than one entity at the same time," for purposes of the FLSA. *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 66 (2d Cir. 2003) (citing 29 C.F.R. § 791.2). Separate legal entities are "joint employers" when they "handle certain aspects of their employer-employee relationships jointly." *Galicia v. Ice Cream House on Bedford Ave LLC*, No. 16-CV-6738 (CBA) (PK), 2017 WL 6733985, at *2 (E.D.N.Y. Oct. 17, 2017), *report and recommendation adopted*, 2017 WL 6759299 (E.D.N.Y. Dec. 29, 2017).[9]   Defendant Ben Tov possesses "operational control over . . . , an ownership interest in . . . , and controls significant functions of" House of Salads. (Compl., Dkt. 1, ¶¶ 3, 23.)  The Court finds that Defendants are "joint employers" subject to joint liability.[10]  *See Galicia*, 2017 WL 6733985, at *3.

### B.    Plaintiffs Are Covered Employees Under the FLSA and NYLL

Plaintiffs are non-exempt employees under the FLSA.  "Under the FLSA, an employee is any individual employed by an employer." *Fermin*, 93 F. Supp. 3d at 32 (internal quotation marks omitted).  "It should be noted that the FLSA 'contains a litany of exemptions' to qualified employees." *Id.* (quoting *Chen v. Major League Baseball*, 6 F. Supp. 3d 449, 454 (S.D.N.Y. 2014)).  An employee's "exempt status depends less on [their] title, and more on the actual duties performed." *McBeth v. Gabrielli Trucks Sales, Ltd.*, 768 F. Supp. 2d 383, 387 (E.D.N.Y. 2010).  The FLSA's "exemptions are affirmative defenses, for which employers have the burden of proof." *Chen*, 6 F. Supp. 3d at 454 (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97, (1974)).

---

[9] This test applies in both FLSA and NYLL cases. *See Galicia*, 2017 WL 6733985, at *1–2 (applying the joint employer test in a case alleging both FLSA and NYLL violations).

[10] Because the Court finds that Defendants are joint employers, it will not address whether Ben Tov is the alter ego of House of Salads.

Plaintiff Sevilla was employed as a kitchen manager and Plaintiff Garrido was employed as a salad preparer.  (Compl., Dkt. 1, ¶ 4.)  Neither Plaintiff's "duties required [] discretion []or independent judgment" (*id.* ¶¶ 37, 54) and Plaintiffs are not exempt from FLSA coverage.  *See Fermin*, 93 F. Supp. 3d at 32 (explaining that jobs such as "kitchen helper/food preparer, cook and dishwasher all constitute non-exempt employment under the FLSA").

The inquiry as to whether a plaintiff is an employee under the NYLL is nearly identical to the inquiry under the FLSA test, but "focuses more on the degree of control exercised by the purported employer, as opposed to the economic reality of the situation." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also* NYLL § 651(5) (defining employee as "any individual employed or permitted to work by an employer in any occupation").  Defendants exercised control over the terms of Plaintiffs' employment by, among other things, having hiring and firing power over Plaintiffs, setting their work schedules, and determining the rate and method of their compensation.  (Sevilla Decl., Dkt. 16-5, ¶ 6; Garrido Decl., Dkt. 16-6, ¶ 6; Compl., Dkt. 1, ¶ 29.)

Plaintiffs have also established that Defendant House of Salads is an enterprise engaged in commerce.  "The FLSA applies only to employees (1) who are personally engaged in interstate commerce or in the production of goods for interstate commerce or (2) who are employed by an enterprise engaged in interstate commerce or in the production of goods for interstate commerce." *Gomez v. El Rancho de Andres Carne de Tres, Inc.*, No. 12-CV-1264 (CBA) (MDG), 2014 WL 1310296, at *3 (E.D.N.Y. Mar. 11, 2014) (citing 29 U.S.C. § 206(a), (b)).  Both Plaintiffs have established coverage by alleging that they regularly handled goods in interstate commerce.  (Compl., Dkt. 1, ¶¶ 36, 53.)

## V.     Defendants' Liability Under Various FLSA and NYLL Provisions

### A.     Defendants Are Liable Under the FLSA and NYLL for Unpaid Minimum Wages

The FLSA requires that "[e]very employer shall pay to each of his employees . . . not less than . . . [the federal minimum wage]."  29 U.S.C. § 206(a)(1).  When a state's minimum wage is higher than the federal minimum wage, the employer must pay the state minimum wage to satisfy the FLSA's minimum wage requirement.  29 C.F.R. § 778.5; *see also* 29 U.S.C. § 218(a); *Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997 (DLI) (CLP), 2017 WL 5033650, at *15 (E.D.N.Y. Sept. 22, 2017).  At all relevant times, the federal minimum wage under the FLSA was $7.25 per hour.  *See* 29 U.S.C. § 206(a)(1)(C).  But Defendants were required to pay New York's higher minimum wage, which surpassed the federal minimum wage beginning in 2013.  NYLL § 652(1).[11]

---

[11] The NYLL prescribed different minimum wage amounts for small and large employers in New York City from 2016 until 2019.  NYLL § 652(1)(a)(i)–(ii).  Although Plaintiffs did not allege facts with respect to the number of individuals employed by Defendants, they used the rate for "large employers" to calculate damages owed.  (Dkt. 16-7, at 1.)  The large-employer rate is applied to businesses that employ 11 or more workers.  NYLL § 652(1)(a)(i).  The Court acknowledges that courts have reached inconsistent results when determining which rate to apply where plaintiffs do not allege the number of employees the defaulting defendant employed.  Some give Plaintiffs the "benefit of the doubt," and apply the large employer rate.  *See, e.g.*, *Lopez v. Emerald Staffing, Inc.*, 18-CV-2788 (SLC), 2020 WL 915821, at *9 n.4 (S.D.N.Y. Feb. 26, 2020); *Sanchez v. Jyp Foods Inc.*, No. 16-CV-4472 (JLC), 2018 WL 4502008, at *9 n.13 (S.D.N.Y. Sept. 20, 2018).  Other courts have applied the small employer rate.  *See, e.g.*, *Reyes v. Cafe Cousina Rest. Inc.*, No. 18-CV-1873 (PAE) (DF), 2019 WL 5722475, at *9 (S.D.N.Y. Aug. 27, 2019), *report and recommendation adopted*, 2019 WL 5722109 (S.D.N.Y. Oct. 7, 2019); *Anzurez v. La Unica Caridad*, No. 20-CV-3828 (JMF) (GWG), 2021 WL 2909521, at *4 (S.D.N.Y. Jul. 12, 2021), *report and recommendation adopted*, 2021 WL 3173734, (S.D.N.Y. July 27, 2021); *Ramirez v. Devoe Grocery Store Inc.*, No. 19-CV-563 (AT) (KHP), 2020 U.S. Dist. LEXIS 131486, at *24 (S.D.N.Y. Jul. 20, 2020), *report and recommendation adopted* (S.D.N.Y. Oct. 2, 2020).  Here, the Court infers that Defendants employed at least 11 people from Plaintiffs' allegation that House of Salads has at least $500,000 in annual sales, *see Juan v. Son of Polisi*, No. 19-CV-4662 (LDH) (PK), 2021 WL 2179344, at *8 n.4 (E.D.N.Y. Jan. 24, 2021) (applying the minimum wage rate for a large employer based on alleged annual sales of $500,000), *report and recommendation adopted* (E.D.N.Y. Mar. 31, 2021); *Castiblanco v. Don Alex Peru*, No. 20-CV-2235 (MKB) (RML), 2021 WL 4755701, at *5 n.2 (E.D.N.Y. Aug. 20, 2021) (same), *report and*

Defendants did not pay the applicable minimum wage from December 31, 2017, when the minimum rate increased to $13.00 per hour, through August 6, 2020. *See id.* § 652(1)(a)(i) (increasing the rate again to $15.00 per hour beginning on December 31, 2018); (Compl., Dkt. 1, ¶¶ 42, 60 (alleging that Defendants paid Plaintiff Sevilla $12.00 per hour from November 2015 through August 2020, and paid Plaintiff Garrido $12.00 per hour from July 2017 through August 2020).)  Accordingly, the Court finds that Defendants are liable for violations of the FLSA's and NYLL's minimum wage provisions.

### B.   Defendants Are Liable Under the FLSA and NYLL For Unpaid Overtime Wages

The FLSA's overtime wage requirement mandates that an employee working "in excess of" 40 hours in a given workweek be paid for the "excess work 'at a rate not less than one and one-half times the regular rate at which [they] are employed.'" *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113–14 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)).  Plaintiffs "must allege overtime without compensation in a 'given' workweek," and not "an all-purpose pleading template alleging overtime in 'some or all workweeks.'" *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013) (citing *Lundy*, 711 F.3d at 114).  Further, Plaintiffs must "provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. N.Y.-Presbyterian Healthcare Sys.*, 723 F.3d 192, 201 (2d Cir. 2013).

The Court finds that Plaintiffs have alleged sufficient facts to show that Defendants violated the overtime wage provisions of the FLSA.  Sevilla "typically" worked 55 hours per week from November 2015 through March 15, 2020, and 102 hours per week from March 16, 2020

---

*recommendation adopted*, 2021 WL 4205195 (E.D.N.Y. Sept. 16, 2021), and thus applies the large employer rate.

through July 31, 2020.  (Compl. ¶¶ 38–39.)  Garrido "typically" worked 55 hours per week from July 15, 2017, through March 15, 2020, and 102 hours per week from March 16, 2020, through July 31, 2020.  (*Id.* ¶¶ 56–57.)  During these periods, Defendants did not pay Plaintiffs any overtime wages for hours worked in excess of 40 hours in a given workweek.  (*Id.* ¶ 10.)  These allegations are undisputed.  The Court finds Defendants liable for violations of the FLSA's overtime provisions—excluding the period before December 2017 for Plaintiff Sevilla due to the three-year statute of limitations.

Defendants also failed to pay required overtime wages under the NYLL, which "mirrors the FLSA in compensation provisions regarding . . . overtime" as a "state analogue" to the FLSA.  *Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011) (citing *Chun Jie Yin v. Kim*, No. 07-CV-1236, 2008 WL 906736, at *4 (E.D.N.Y. Apr. 1, 2008)).  As discussed above, Sevilla was owed, but not paid, time-and-a-half wages for hours worked in excess of 40 in a given week from November 1, 2015 through July 31, 2020, and Garrido was owed, but not paid, time-and-a-half wages from July 15, 2017 through July 31, 2020.  Defendants are therefore liable for violating the overtime wage provisions of the NYLL for all overtime wage claims.

## C.    Defendants Are Liable Under the NYLL for Unpaid Spread of Hours Pay

New York "requires that an employee be paid a spread-of-hours premium equal to one hour of pay at the statutory minimum wage for each day an employee works over ten hours." *Gunawan*, 897 F. Supp. 2d at 84 (internal quotation marks omitted); *see also* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4(a).  Defendants did not pay spread-of-hours wages to Plaintiffs for hours worked that exceeded ten hours on any given day.  Plaintiff Sevilla "typically" worked 15 hours per day every Friday from November 2015 through March 15, 2020, and 17 hours per day Sunday through Friday between March 16, 2020, and July 31, 2020.  (Compl., Dkt. 1, ¶¶ 38–39.)  Plaintiff Garrido "typically" worked 15 hours per day on Fridays from July 15, 2017, through March 15, 2020, and

17 hours per day Sunday through Friday between March 16, 2020, and July 31, 2020.  (*Id.* ¶¶ 56–57.)  Neither Sevilla nor Garrido received additional spread-of-hours pay.  Therefore, the Court finds Defendants liable under the NYLL's spread of hours regulation.

### D.  Defendants Are Liable for Plaintiffs' Equipment Costs

"[A]n employer violates the FLSA if it requires an employee to purchase 'tools of the trade which will be used in or are specifically required for the performance of the employer's particular work' and 'the cost of such tools [purchased by the employee] cuts into the minimum or overtime wages required to be paid to [the employee].'"  *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 476 (S.D.N.Y. 2015) (third alteration in original) (quoting 29 C.F.R. § 531.35).  The same is true under the NYLL.  *Id.* at 477 ("If an employee must spend money to carry out duties assigned by his or her employer, those expenses must not bring the employee's wage below the required minimum wage." (quoting N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.7(c)).

Plaintiffs were required to purchase "tools of the trade," including "kitchen supplies," and were not reimbursed for those purchases.  (Compl., Dkt. 1, ¶¶ 50, 68.)  Therefore, the Court finds Defendants liable for Plaintiffs' costs in purchasing "tools of the trade" during their employment.[12]

---

[12] Plaintiffs also allege that "Defendants made unlawful deductions from Plaintiffs' wages including, but not limited to, deductions for meals they never ate."  (Compl., Dkt. 1, ¶ 119.)  But Plaintiffs do not allege any facts that demonstrate unlawful deductions from their wages under the NYLL.  Plaintiff Garrido alleges that she was "interrupt[ed] constantly" during her 15-minute meal breaks, but does not allege that these interruptions constituted a deduction from her wages in violation of the NYLL.  (*See* Compl., Dkt. 1, at ¶ 63.)  Plaintiffs also do not include estimated damages for any unlawful deduction from their wages in their default judgment submissions.  (*See* Dkt. 16-7, at 1–2.)  Because Plaintiffs do not allege facts evidencing unlawful deductions from their wages, other than purchasing "tools of the trade," the Court does not find Defendants liable under Plaintiffs' Ninth Cause of Action.

### E.   Plaintiffs Lack Standing to Bring Their NYLL Claims for Failure to Provide Hiring Notice and Wage Statements in Federal Court

The NYLL requires employers to provide employees, at the time of hiring, both in English and in the employee's primary language, a notice with the "rate or rates of pay and basis thereof," and the employer's official name, address, and telephone number.   The NYLL § 195(1)(a).   An employee who does not receive a wage notice within ten business days of their first day of employment may recover $50.00 for "each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars."   NYLL § 198(1-b).   NYLL also requires employers to provide employees wage statements with every payment of wages that list information such as the pay period, names of the employee and employer, the employee's contact information, and the rate and basis for pay.   NYLL § 195(3).   An employee who does not receive wage statements with each payment of wages may recover $250.00 for "each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars."   NYLL § 198(1-d).

While Defendants did not provide proper wage notice and statements to Plaintiffs, Plaintiffs lack standing to maintain these claims.   *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012)  ("It is well established that 'a plaintiff must demonstrate standing for each claim she seeks to press." (brackets omitted) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006))).   "That is because, based on the record before the Court, it is not clear that those policies led to an 'injury' that can be recognized by a federal court."   *Francisco v. NY Tex Care, Inc.*, No. 19-CV-1649 (PKC) (ST), 2022 WL 900603, at *1 (E.D.N.Y. Mar. 28, 2022); *see also Wang v. XBB, Inc.*, No. 18-CV-7341 (PKC) (ST), 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022) ("Although the evidence establishes by a preponderance that Defendants failed to provide plaintiff with required notices under the NYLL, Plaintiff lacks standing to recover on those

15

claims."). Technical statutory violations that do not lead "to either a tangible injury or something akin to a traditional cause of action" cannot sustain Article III standing in federal court. *Id.* (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021); *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 62–63 (2d Cir. 2021)). Accordingly, the Court does not have subject matter jurisdiction over Plaintiffs' claims for violations of NYLL § 195(1)(a) and § 195(3).

### F. Defendants Are Not Liable Under the Timely Payment Provisions of the NYLL

Plaintiffs allege that Defendants violated Section 191 of the NYLL by failing to pay Plaintiffs' wages on a "regular weekly basis." (Compl., Dkt. 1, at ¶ 123.) However, Plaintiffs do not provide any specific facts as to when or at what frequency they were paid, or estimated damages for this claim. (*See generally* Compl., Dkt. 1; Dkt. 16-7, at 1–2.) Because Plaintiffs fail to allege specific facts as to this claim, the Court finds that Defendants are not liable for any violation of NYLL § 191 as to Plaintiffs.

## VI. Damages

When a plaintiff claims FLSA and NYLL violations in the context of a default judgment, "the plaintiff's recollection and estimates of hours worked are presumed to be correct." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012); *see also Santillan*, 822 F. Supp. 2d at 294 ("In the absence of rebuttal by defendants, or where the employer has defaulted, . . . the employee's recollection and estimates of hours worked are presumed to be correct." (internal quotation marks, alterations, brackets, and citations omitted)). Furthermore, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of [the recordkeeping provisions] of the [FLSA]." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946).

Plaintiff Sevilla worked the following hours while employed by Defendants:

- "From approximately November 2015 until on or about March 15, 2020, Plaintiff Sevilla worked from approximately 8:00 a.m. until on or about 6:00 p.m., Mondays through Thursdays and from approximately 8:00 a.m. until on or about 11:00 p.m., on Fridays (typically 55 hours per week)." (Compl., Dkt. 1, ¶ 38; Sevilla Decl., Dkt. 16-5 ¶ 13.)

- "From approximately March 16, 2020 until on or about July 31, 2020, Plaintiff Sevilla worked from approximately 5:00 a.m. until on or about 10:00 p.m., Sundays through Fridays (typically 102 hours per week)." (Compl., Dkt. 1, ¶ 39; Sevilla Decl., Dkt. 16-5 ¶ 14.)

- "From approximately August 1, 2020 until on or about August 6, 2020, Plaintiff Sevilla worked from approximately 8:00 a.m. until on or about 6:00 p.m., Mondays through Thursdays (typically 40 hours per week)." (Compl., Dkt. 1, ¶ 40; Sevilla Decl., Dkt. 16-5 ¶ 15.)

In addition, Defendants required Sevilla to "start working 30 minutes prior to his scheduled start time and continue working 30 minutes past his scheduled departure time two to three days a week," but did not pay Sevilla for this additional time. (Compl., Dkt. 1, ¶ 44.)

Plaintiff Garrido worked the following hours while employed by Defendants:

- "From approximately July 15, 2017 until on or about March 15, 2020, Plaintiff Garrido worked from approximately 8:00 a.m. until on or about 6:00 p.m., Mondays through Thursdays and from approximately 8:00 a.m. until on or about 11:00 p.m. on Fridays (typically 55 hours per week)." (Compl., Dkt. 1, ¶ 56; Garrido Decl., Dkt. 16-6 ¶ 13.)

- "From approximately March 16, 2020 until on or about July 31, 2020, Plaintiff Garrido worked from approximately 5:00 a.m. until on or about 10:00 p.m., Sundays through Fridays (typically 102 hours per week)." (Compl., Dkt. 1, ¶ 57; Garrido Decl., Dkt. 16-6 ¶ 14.)

- "From approximately August 1, 2020 until on or about August 6, 2020, Plaintiff Garrido worked from approximately 8:00 a.m. until on or about 6:00 p.m., Mondays through Thursdays (typically 40 hours per week)." (Compl., Dkt. 1, ¶ 58; Garrido Decl., Dkt. 16-6 ¶ 15.)

Defendants also required Garrido to "start working 1 to 2 hours prior to her scheduled start time and continue working 1 to 2 hours past her scheduled departure time once every two weeks," but did not pay her for this additional time. (Compl., Dkt. 1, ¶ 62.)

17

A.      **Minimum Wage, Overtime, and Spread of Hours**

The amount of unpaid minimum and overtime wages is calculated by subtracting the amount Plaintiffs were actually paid from the amount that they should have been paid under NYLL.  The applicable wage rate for each period—$12.00 per hour from 2015 to December 2017, $13.00 per hour from December 2017 to December 2018, and $15.00 per hour from December 2018 to August 2020—is multiplied by 40 to account for the appropriate weekly pay for Plaintiffs' regular, full-time work hours.  Next, any weekly hours worked in excess of 40 are multiplied by the applicable overtime wage rate—1.5 times the applicable wage—and added to the amount of unpaid regular wages.  From this combined amount is subtracted the pay that Plaintiffs actually received, which is calculated by multiplying the $12.00-per-hour rate by the total number of regular and overtime hours they worked.  This final number is the total unpaid minimum and overtime wages owed to Plaintiffs.  (*See* Dkt. 16-7, at 1 (Plaintiffs' damages chart).)

The Court awards Plaintiff Sevilla total unpaid minimum and overtime wages in the amount of $51,122.50.[13]  The Court awards Plaintiff Garrido total unpaid minimum and overtime wages in the amount of $43,122.50.[14]

Unpaid spread-of-hours pay is calculated by multiplying the legal minimum wage rate by the number of days that Plaintiffs worked in excess of 10 hours per day in each period.  The Court awards Plaintiff Sevilla $4,539.75 and Plaintiff Garrido $3,700.00 for unpaid spread of hours compensation.

---

[13] This amount is higher than the estimation in Plaintiffs' chart, which did not account for unpaid minimum wages during the final week of Plaintiff Sevilla's employment.  From August 1 through August 6, 2020, Plaintiff Sevilla worked 40 hours and was paid $12.00 per hour but the legal minimum wage was $15.00 per hour.  (*See* Dkt. 16-7, at 1); NYLL § 652(1)(a)(i).

[14] This amount is the same as estimated in Plaintiffs' chart.  (*See* Dkt. 16-7, at 1.)

### B.      Tools of the Trade

Plaintiffs seek damages for the amount spent on tools of the trade, namely kitchen supplies, that Defendants required them to purchase.  The Court accepts Plaintiffs' claims that they were required to purchase these materials and that the costs provided in their damages calculations are correct.  (*See* Dkt. 16-7, at 2); *Cocoletzi v. Fat Sal's Pizza II, Corp.*, No. 15-CV-2696 (CM) (DF), 2018 WL 7291455, at *20 (S.D.N.Y. Dec. 6, 2018), *recommendation and report adopted*, 2019 WL 92456 (S.D.N.Y. Jan. 3, 2019) (memo endorsement).  Accordingly, the Court awards Sevilla $500.00 and Garrido $90.00 in tools-of-the-trade damages.

### C.      Liquidated Damages

Plaintiffs seek "liquidated damages, computed at 100% of the unpaid minimum, overtime wages, and spread of hours" pay under the NYLL.  (Dkt. 16-1 ¶ 56.)  Under the FLSA and NYLL, employees may be entitled to liquidated damages equal to the amount owed for unpaid wages.  29 U.S.C. § 216(b); NYLL § 198(1-a).  Liquidated damages are recoverable under the NYLL "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law."  NYLL § 198(1-a); *see also* 29 U.S.C. § 260 (giving courts discretion to award no liquidated damages where the employer makes a showing of good faith).  A defendant's burden to show good faith is "a difficult one" even when the defendant makes an appearance in a case.  *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008).  Here, Defendants have not responded to Plaintiffs' claims and have made no showing of good faith.  Accordingly, liquidated damages are appropriate.  *See, e.g.*, *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14-CV-10234 (JGK) (JLC), 2016 WL 4704917, at *15 (S.D.N.Y. Sept. 8, 2016) (defaulting defendants did not show good faith), *report and recommendation adopted*, 2016 WL 6879258, (S.D.N.Y. Nov. 18, 2016); *Herrera*, 2015 WL 1529653, at *12 (same).

The Second Circuit has interpreted the NYLL to preclude the duplicate award of liquidated damages under both the NYLL and FLSA.  *See Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). Because "the law providing the greatest recovery will govern," Plaintiffs are awarded liquidated damages under the NYLL, calculated at 100% of total wages owed under the minimum wage and overtime, available under both the FLSA and NYLL, and spread-of-hours claims, available only under the NYLL.[15]  *Charvac v. M & T Project Mgrs. of N.Y., Inc.*, No. 12-CV-5637 (CBA) (RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015).

The Court awards liquidated damages to Sevilla in the amount of $55,662.25 and to Garrido in the amount of $46,812.50.

### D.    Pre- and Post-Judgment Interest

"In any action instituted in the courts upon a wage claim by an employee . . . in which the employee prevails, the court shall allow such employee to recover . . . prejudgment interest as required under the civil practice law and rules."  NYLL § 198(1-a).  Plaintiffs may recover both prejudgment interest and liquidated damages under the NYLL.  *Saucedo v. On the Spot Audio Corp.*, No. 16-CV-451 (CBA) (CLP), 2016 WL 8376837, at *16 (E.D.N.Y. Dec. 21, 2016) (finding that both are recoverable because "liquidated damages and prejudgment interest are not functional equivalents under the NYLL"), *report and recommendation adopted*, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017), *vacated on other grounds*, 2018 WL 4347791 (E.D.N.Y. Jan. 23, 2018).  Plaintiffs

---

[15] Because the tools-of-the-trade damages are listed as a separate damages category in Plaintiffs' chart and are not presented as an adjustment of their wages, no liquidated damages are available for the cost of tools of the trade.  *See Cocoletzi*, 2018 U.S. Dist. LEXIS 208130 at *45 n.6.

may recover prejudgment interest under the NYLL for wages owed,[16] but not for liquidated damages. *Gamero v. Koodo Sushi Corp.*, 272 F Supp. 3d 481, 515 (S.D.N.Y. 2017).

Under the NYLL, prejudgment "[i]nterest shall be at the rate of nine per centum per annum, except where otherwise provided by statute." N.Y. C.P.L.R. § 5004(a). It is "computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred." N.Y. C.P.L.R. § 5001(b). "Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Id.* "Courts applying N.Y. CPLR § 5001 have wide discretion in determining a reasonable date from which to award pre-judgment interest, and interest is calculated using the simple rate, not a compounded rate . . . ." *Fermin*, 93 F. Supp. 3d at 49 (citations and quotations omitted).

The prejudgment interest for Plaintiffs is calculated by multiplying 9% of the total amount of unpaid wages by the number of years passed between the intermediate date and the date of entry of judgment. For Plaintiff Sevilla, total unpaid wages equal $55,662.25, 9% of which is $5,009.60. Four years passed between March 30, 2018 and the date of entry of judgment, March 30, 2022. Accordingly, the prejudgment interest owed to Plaintiff Sevilla is $20,052.13. For Plaintiff Garrido, the total unpaid wages equal $46,812.50, 9% of which is $4,213.13. The number of years between January 25, 2019 and the date of entry of judgment, March 30, 2022, is 3.18. Accordingly, the prejudgment interest owed to Plaintiff Garrido is $13,389.66.

Plaintiffs are also entitled to post-judgment interest under 28 U.S.C. § 1961(a). Post-judgment interest is calculated "from the date of the entry of the judgment at [the federal] rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week

---

[16] Prejudgment interest is not awarded for the tools of the trade claims. *See supra* note 14.

preceding the date of judgment." *Id.* (typographical error and explanatory footnote omitted). Plaintiffs did not request a post-judgment award, but such awards are "mandatory" under § 1961. *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004). Accordingly, the Court orders that Plaintiffs be awarded post-judgment interest on all sums awarded, to accrue from the entry of judgment until the date of payment. *See Teofilo v. Real Thai Cuisine Inc.*, No 18-CV-7238 (KPF), 2021 WL 22716, at *6 (S.D.N.Y. Jan. 4, 2021) (awarding both post-judgment interest and a potentially increased award under the NYLL).

### E.      Increased Judgment in the Event of Defendants' Failure to Pay

Under the NYLL,

> [a]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal therefrom is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent.

NYLL § 663(4). Damages and prejudgment interest are "automatically increase[d] by fifteen percent" if they remain unpaid 90 days after judgment was entered. *Rosendo v. Everbrighten, Inc.*, No. 13-CV-7256 (JGK), 2015 WL 4557147, at *1 (S.D.N.Y. July 28, 2015).

Plaintiff's minimum wage, overtime, and spread-of-hours damages were calculated under the NYLL because New York law provided the proper minimum wage rate. Because all of Plaintiffs damages are attributable to the NYLL, the increased judgment provision will apply if Defendants fail to pay damages as directed by this Memorandum and Order.

## VII.   Attorneys' Fees and Costs

Plaintiffs also seek to recover attorneys' fees and costs under the FLSA and NYLL. (*See* Dkt. 16-1, at 12 (citing 29 U.S.C. § 216(b) and NYLL § 663(1)).) Having granted Plaintiff's Motion for Default Judgment, the Court awards Plaintiffs' counsel $3,597.50 in attorneys' fees and $540.00 in costs.

A.    **Attorneys' Fees**

Courts determine the reasonable amount of attorneys' fees by multiplying "'the number of hours reasonably expended on the litigation by a reasonable hourly rate,' or a 'presumptively reasonable fee.'" *Gomez*, 2014 WL 1310296, at \*10 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany Cnty. Bd. of Elections*, 522 F.3d 182, 188–90 (2d Cir. 2008); *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058–59 (2d Cir. 1989)).  To calculate the "presumptively reasonable fee," the district court considers what a "paying client would be willing to pay." *Gortat v. Capala Bros., Inc.*, 621 F. App'x 19, 22 (2d Cir. 2015) (summary order) (quoting *Arbor Hill*, 522 F.3d at 183–84).  Plaintiffs bear the burden of proving that the requested fee is reasonable. *Santillan*, 822 F. Supp. 2d at 299.

1.    The Requested Hourly Rates Are Excessive

The court looks to rates common in the community to determine the reasonable rate for an attorney's services, and considers the attorney's skill, experience, and reputation. *McFarlane v. Harry's Nurses Registry*, No. 17-CV-6350 (PKC) (PK), 2021 WL 2646327, at \*4 (E.D.N.Y. June 28, 2021).  "The 'community' is generally considered the district where the district court sits." *Santillan*, 822 F. Supp. 2d at 299 (citing *Arbor Hill*, 522 F.3d at 190).  A court is guided by "(1) rates awarded in prior cases; (2) its own knowledge of hourly rates charged in the district; and (3) evidence submitted by the parties." *Hernandez v. NJK Contractors, Inc.*, No. 09-CV-4812 (RER), 2015 WL 5178119, at \*4 (E.D.N.Y. Sept. 3, 2015) (citing *Farbotko v. Clinton Cnty. of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005)).  Courts also consider the "nature of representation and type of work involved in a case." *See Arbor Hill*, 522 F.3d at 184 n.2.

Plaintiffs request $4,805.00 in attorneys' fees. (Dkt. 16-1 at 12.) Plaintiffs seek an hourly rate of $450 for Michael Faillace,[17] $350 for Catalina Sojo, and $125 for paralegals. (*Id.* at 13–14.) The rate requested for Mr. Faillace is excessive.

Mr. Faillace is the Managing Member of Michael Faillace & Associates, P.C., and has over 30 years of experience. (*Id.*) Courts have found that a reasonable hourly rate for experienced partners is generally between $300 and $450 dollars. *See McFarlane*, 2021 WL 2646327, at * 4. While Mr. Faillace has considerable experience litigating the FLSA and NYLL actions, the rate requested is excessive under the circumstances of this case. The FLSA and NYLL are "straightforward" and "relatively simple." *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 208 (E.D.N.Y. 2007). The work required for this case was particularly simple because it was resolved on a motion for default judgment. *Cf. Tapia v. CLCH 3rd Ave. LLC*, No. 14-CV-8529 (AJN), 2017 U.S. Dist. LEXIS 222415, at *8 (S.D.N.Y. Aug. 23, 2017) (lowering Mr. Faillace's requested rate of $450 to $400 per hour because the case was resolved by a one-day bench trial and therefore "particularly simple"). Accordingly, the Court finds that a reasonable rate for Mr. Faillace is $400 per hour. *See id.*; *Tucubal v. MK 32 Rest. Corp.*, 18-CV-1442 (VSB), 2019 U.S. Dist. LEXIS 190571, at *7 (S.D.N.Y. Nov. 1, 2019) (reducing Faillace's rate from $450 to $400 per hour); *Gervacio v. ARJ Laundry Servs. Inc.*, No. 17-CV-9632 (AJN), 2019 WL 330631, at *2 (S.D.N.Y. Jan. 25, 2019) (same); *Mendoza v. CGY& J Corp.*, No. 15-CV-9181 (RA), 2017 WL 4685100, at *2 (S.D.N.Y. Oct. 17, 2017) (same); *but see Campos v. Quentin Mkt. Corp.*, No. 16-

---

[17] Mr. Faillace is currently suspended from practice in this district, but he may nonetheless be awarded fees because the hours billed for this matter predate his suspension. *See In re Faillace*, No. 21-MC-3192 (AMD) (E.D.N.Y. Nov. 9, 2021), ECF 3 (adopting the Southern District of New York's Order in *In re Faillace*, No. M-2-238, which suspended Faillace for two years and stated that he "may be compensated on a quantum meruit basis for services rendered prior to the effective date of the suspension.").

CV-5303, 2018 WL 9945754, at *9 (E.D.N.Y. October 17, 2018) (awarding Faillace the requested $450 per hour rate), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 56843 (E.D.N.Y. Mar. 31, 2019).

The rates requested for Ms. Sojo and the paralegals who worked on this matter are also excessive.  Ms. Sojo completed her legal education in 2019 and has less than two years of experience litigating FLSA wage cases.  (Dkt. 16-1, at 14.)  Based on her experience, the Court considers Ms. Sojo to be the equivalent of a junior associate, yet her requested rate of $350 is above what courts have awarded to *senior* associates.  *See Payamps v. M&M Convenience Deli & Grocery Corp.*, No. 16-CV-4895 (LDH) (SJB), 2019 WL 8381264, at *15 (E.D.N.Y. Dec. 9, 2019).  The typical rates in this district for junior associates are $100 to $200 per hour.  *See Quiroz v. Luigi's Dolceria, Inc.*, No. 14-CV-871 (VVP), 2016 WL 6311868, at *2 (E.D.N.Y. Oct. 28, 2016).  Considering the circumstances of this case, and the nature of Ms. Sojo's work on this matter, the Court finds that a reasonable rate is $175 per hour.  (*See* Dkt. 16-8 (indicating that Ms. Sojo's work was largely limited to reviewing documents)); *see also Armata v. Unique Cleaning Servs., LLC*, No. 13-CV-3625 (DLI) (RER), 2015 U.S. Dist. LEXIS 180995, at *26–28 (E.D.N.Y. Sept. 14, 2015) (awarding an hourly rate of $175 to a junior associate who had four years of experience), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 118693 (E.D.N.Y. Aug. 30, 2016).  A typical rate for paralegals in this district is $70 to $100 per hour.  *Castiblanco v. Don Alex Peru*, No. 20-CV-2235 (MKB) (RML), 2021 WL 4755701, at *9 (E.D.N.Y. Aug. 20, 2021) (collecting cases).  Accordingly, the Court reduces the requested rate for the paralegals who worked on this matter to $100 per hour.

## 2.   The Hours Billed Are Reasonable

The Court next considers the reasonableness of the hours billed.  "[C]ourts are . . . expected to take into account their own familiarity and experience both 'generally' and with the particular

case at hand, rather than attaining 'exactitude' with respect to each individual billing entry." *See Concrete Flotation Sys. v. Tadco Constr. Corp.*, No. 07-CV-319, 2010 WL 2539771, at *7 (E.D.N.Y. Mar. 15, 2010) (citing *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)), *report and recommendation adopted*, 2010 WL 2539661 (E.D.N.Y. June 17, 2010). Courts "assess whether the hours expended by plaintiff's counsel were reasonable, and exclude any hours that were excessive, redundant, or otherwise unnecessary to the litigation." *See Nuriddinov v. Masada III, Inc.*, No. 15-CV-5875, 2017 WL 9253401, at *12 (E.D.N.Y. July 24, 2017), *report and recommendation adopted with modifications*, 2018 WL 1251335 (E.D.N.Y. Mar. 12, 2018).

Here, Plaintiffs' counsel seeks compensation for 19.1 hours of work. (Dkt. 16-8.) The Court finds that the hours billed are reasonable. *See Castiblanco*, 2021 WL 4755701, at *10 (finding 23.7 hours reasonable in a default judgment FLSA case); *Fermin*, 93 F. Supp. 3d at 52 (finding 26.4 hours reasonable).

### B.   Costs

Plaintiffs also seek compensation for $540.00 in litigation costs, including $400.00 for this Court's filing fee, and $140 in service of process fees. (Dkt. 16-8, at 3.) "Ordinarily, plaintiffs may recover costs relating to filing fees, process servers, postage, and photocopying." *Pichardo v. El Mismo Rincon Latino Corp.,* No. 17-CV-7439, 2018 WL 4101844, at *11 (E.D.N.Y. Aug. 7, 2018) (internal quotation marks omitted), *report and recommendation adopted*, 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018); *see also LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). The Court finds that Plaintiffs have submitted sufficient documentary evidence for these costs (*see* Dkt. 16-8), and that the amount requested is reasonable.

**CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part Plaintiffs' Motion for Default Judgment against House of Salads One LLC and Asher Ben Tov, and deems Defendants jointly and severally liable. The Court awards damages as follows:

| Plaintiff Sevilla | |
|---|---|
| Unpaid Minimum Wage and Overtime Pay | $51,122.50 |
| Unpaid Spread of Hours Pay | $4,539.75 |
| Tools of the Trade | $500.00 |
| Liquidated Damages | $55,662.25 |
| **Total** | **$111,824.50** |

| Plaintiff Garrido | |
|---|---|
| Unpaid Minimum Wage and Overtime Pay | $43,112.50 |
| Unpaid Spread of Hours Pay | $3,700.00 |
| Tools of the Trade | $90.00 |
| Liquidated Damages | $46,812.50 |
| **Total** | **$93,715.00** |

The Court further awards Plaintiffs post-judgment interest on all sums awarded, and an additional $3,597.50 in attorneys' fees and $540.00 in costs. The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: March 30, 2022
     Brooklyn, New York